## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURA YOUNG, individually and on behalf of all others similarly situated, | No. 1:24-cv-07438-CPO-MJS |
| Plaintiff, | **MOTION DAY: December 2, 2024** |
| v. | **ORAL ARGUMENT REQUESTED** |
| SUBARU CORPORATION, SUBARU OF AMERICA, INC., TOYOTA MOTOR CORPORATION, and TOYOTA MOTOR NORTH AMERICA, INC., | |
| Defendants. | |

## DEFENDANT TOYOTA MOTOR NORTH AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

FACTUAL ALLEGATIONS AND RELEVANT BACKGROUND ......................3

ARGUMENT ...........................................................................................................6

I.    THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER TOYOTA BASED ON THE CURSORY ALLEGATIONS IN PLAINTIFF'S COMPLAINT. .........................................................................8

II.   PLAINTIFF LACKS STANDING TO PURSUE CLAIMS ON BEHALF OF ANY PUTATIVE CLASS MEMBER OUTSIDE ARKANSAS. ..........14

III.  PLAINTIFF'S ARKANSAS CLAIMS SUFFER FROM NUMEROUS PLEADING DEFECTS THAT COMPEL DISMISSAL. .............................16

      A.    Plaintiff's Express Warranty Claim Fails on Multiple Grounds.........17

      B.    Plaintiff Cannot Maintain Her Claim for Breach of Implied Warranty. ..............................................................................................22

      C.    Plaintiff's MMWA Claim Fails With Her Warranty Claims. .............24

      D.    Plaintiff Cannot Pursue a Claim for Unjust Enrichment Under Arkansas Law. .....................................................................................25

      E.    Plaintiff Does Not Allege Sufficient Facts to Support Her Claim for Fraudulent Concealment. ..............................................................26

            1.    Plaintiff Did Not Rely on Any Purported Omissions ...............27

            2.    Toyota Did Not Owe Plaintiff a Duty to Disclose ...................28

            3.    Plaintiff Does Not Plead Sufficient Facts to Show That Toyota Knew of the Purported Engine Issue ...........................29

      F.    Plaintiff's Arkansas DTPA Claim Should Be Dismissed. ..................35

      G.    Plaintiff Lacks Article III Standing to Seek Prospective Equitable Relief. ..................................................................................................36

CONCLUSION ....................................................................................................37

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abira Med. Lab'ys, LLC v. Cigna Health & Life Ins. Co.*,
   No. 22CV6408 (EP) (AME), 2023 WL 4074081 (D.N.J. June 16, 2023) .................. 12

*Abira Med. Lab'ys, LLC v. CoreSource, Inc.*,
   No. CV 23-03777 (GC) (TJB), 2024 WL 3964293 (D.N.J. Aug. 28,
   2024) ...................................................................................................................... 8

*Alban v. BMW of N. Am., LLC*,
   No. Civ. 09-5398, 2010 WL 3636253 (D.N.J. Sept. 8, 2010) ...................................... 8

*Antico v. RAM Payment, LLC*,
   No. 1:20-CV-12130, 2024 WL 4315255 (D.N.J. Sept. 26, 2024) .............................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 7, 31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 7, 31

*Brown v. Hyundai Motor Am.*,
   No. CV1811249SDWJAD, 2019 WL 4126710 (D.N.J. Aug. 30, 2019) .................... 23

*Bruce Martin Constr. v. CTB, Inc.*,
   735 F.3d 750 (8th Cir. 2013) ................................................................................... 19

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ..................................................................................... 3

*City of Damascus v. Bivens*,
   726 S.W.2d 677 (Ark. 1987) ..................................................................................... 26

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................................................. 37

*Coba v. Ford Motor Co.*,
   932 F.3d 114 (3d Cir. 2019) ........................................................................ 17, 18, 19

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010) ........................................................................ 19, 24

*Ctr. v. Conagra Foods, Inc.*,
    No. 5:14-CV-05248, 2015 WL 4106473 (W.D. Ark. July 6, 2015) ........................... 23

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ................................................................................................. 15

*Dawson v. Gen. Motors LLC*,
    Civ. No. 19-8680, 2019 WL 3283046 (D.N.J. July 22, 2019) .................................... 32

*Demorato v. Carver Boat Corps.*,
    No. 06–240, 2007 WL 1456207 (D.N.J. 2007) ......................................................... 24

*Deras v. Volkswagen Grp. of Am., Inc.*,
    No. 17-CV-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) ...................... 34

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995) ....................................................................................... 20

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009) .................................................................................. 9, 14

*Evans v. Murphy*,
    No. CV225427CPOAMD, 2023 WL 3735946 (D.N.J. May 31, 2023) ...................... 27

*Fischer v. Fed. Express Corp.*,
    42 F.4th 366 (3d Cir. 2022) .................................................................................. 8, 9

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir. 2020) ........................................................................... 24, 25

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ........................................................................................... 12, 13

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ....................................................................................... 7

*Granillo v. FCA US LLC*,
    No. CV 16-153 (FLW)(DEA), 2016 WL 9405772 (D.N.J. Aug. 29,
    2016) ........................................................................................................................ 30

*Greene v. BMW of N. Am.*,
    No. CIV. 2:11-04220 WJM, 2012 WL 5986457 (D.N.J. Nov. 28, 2012) ................. 23

*Gregorio v. Ford Motor Co.*,
    522 F. Supp. 3d 264 (E.D. Mich. 2021) .............................................................. 32, 33

*Haag v. Hyundai Motor Am.*,
    294 F. Supp. 3d 102 (W.D.N.Y. 2018) ....................................................... 18

*Hall v. Gen. Motors, LLC*,
    No. 19-CV-10186, 2020 WL 1285636 (E.D. Mich. Mar. 18, 2020) .................... 32, 34

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) .......................................................... 9, 12

*Hobson v. Entergy Arkansas, Inc.*,
    432 S.W.3d 117 (Ark. Ct. App. 2014) ....................................................... 29

*Jarrett v. Panasonic Corp. of N. Am.*,
    8 F. Supp. 3d 1074 (E.D. Ark. 2013) ....................................................... 25

*Kavon v. BMW of N. Am., LLC*,
    605 F. Supp. 3d 622 (D.N.J. 2022) ....................................................... 25

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
    149 F.3d 227 (3d Cir. 1998)............................................................. 7

*Lakeview Country Club, Inc. v. Superior Prod.*,
    926 S.W.2d 428 (Ark. 1996)............................................................. 23

*Lattaker v. Rendell*,
    269 F. App'x 230 (3d Cir. 2008) ....................................................... 37

*Lewis v. Mercedes-Benz USA, LLC*,
    530 F. Supp. 3d 1183 (S.D. Fla. 2021) ....................................................... 30

*Luppino v. Mercedes-Benz USA, LLC*,
    No. 09-CV-5582 (DMC) (JBC), 2013 WL 6047556 (D.N.J. Nov. 12,
    2013) ....................................................... 17

*Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
    107 F.3d 1026 (3d Cir. 1997)............................................................. 11

*McGill v. Lafayette Cty.*,
    No. 4:07CV4003, 2007 WL 2898543 (W.D. Ark. Sept. 28, 2007) ............................ 28

*McGuire v. BMW of N. Am., LLC*,
    No. CIV.A. 13-7356 JLL, 2014 WL 2566132 (D.N.J. June 6, 2014) ....................... 16

*McNair v. Synapse Grp. Inc.*,
    672 F.3d 213 (3d Cir. 2012)............................................................. 37

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992)........................................................................ 7

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004)........................................................................... 8

*Mooradian v. FCA US, LLC*,
    No. 1:17-CV- 1132, 2017 WL 4869060 (N.D. Ohio Oct. 27, 2017).......................... 23

*Morris v. Knopick*,
    521 S.W.3d 495 (Ark. Ct. App. 2017) ............................................................. 27

*Muccio v. Hunt*,
    490 S.W.3d 310 (Ark. 2016)......................................................................... 27

*Murphy v. Eisai, Inc.*,
    503 F. Supp. 3d 207 (D.N.J. 2020) ............................................................. 6, 7

*Pellecchia v. Cty. of Burlington*,
    No. CV224707CPOMJS, 2022 WL 17667906 (D.N.J. Dec. 13, 2022) ..................... 27

*Pinon v. Daimler AG*,
    2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) .............................................. 29, 36

*Polytec Internacional, S.A. v. Artco Glob. Grp., LLC*,
    No. 2:23-CV-480, 2023 WL 8600575 (S.D. Ohio Sept. 6, 2023) ............................ 10

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) ................................................................ 15

*Resnick v. Hyundai Motor Am., Inc.*,
    No. CV 16-00593-BRO, 2017 WL 6549931 (C.D. Cal. Aug. 21, 2017) ................... 34

*Robinson v. Kia Motors Am., Inc.*,
    No. 13-006, 2015 WL 5334739 (D.N.J. Sept. 11, 2015)........................................ 19

*Roe v. Ford Motor Co.*,
    No. 218CV12528LJMAPP, 2019 WL 3564589 (E.D. Mich. Aug. 6,
    2019) ..................................................................................................... 33

*Rowland v. Bissell Homecare, Inc.*,
    73 F.4th 177 (3d Cir. 2023) ......................................................................... 25

*Schechter v. Hyundai Motor Am.*,
    No. CV 18-13634 (FLW), 2019 WL 3416902 (D.N.J. July 29, 2019).................. 30, 31

*Semeran v. Blackberry Corp.*,
  No. CV 15-750, 2016 WL 3647966 (D.N.J. July 6, 2016)..........................................16

*Smith v. Gen. Motors LLC*,
  988 F.3d 873 (6th Cir. 2021) ........................................................................... 30, 33

*Snowdy v. Mercedes-Benz USA, LLC*,
  No. CV 23-1681 (ES) (AME), 2024 WL 1366446 (D.N.J. Apr. 1, 2024) .................15

*Stevenson v. Mazda Motor of Am., Inc.*,
  No. 14-5250 FLW DEA, 2015 WL 3487756 (D.N.J. June 2, 2015)...........................31

*Subaru of Am., Inc. v. Cheshire Foreign Auto Serv., Inc.*,
  No. 1:23-CV-02281, 2024 WL 2319337 (D.N.J. May 22, 2024)..................... 8, 12, 14

*Thaxton v. GEICO Advantage Ins. Co.*,
  No. 1:18-CV-00306-KWR-KK, 2022 WL 488141 (D.N.M. Feb. 17,
  2022) ..................................................................................................................10

*Tijerina v. Volkswagen Grp. of Am., Inc.*,
  No. 221CV18755BRMLDW, 2023 WL 6890996 (D.N.J. Oct. 19, 2023).................15

*Tuohey v. Chenal Healthcare, LLC*,
  173 F. Supp. 3d 804 (E.D. Ark. 2016) ..................................................................25

*Ward v. Auerbach*,
  No. CV 16-12543-FDS, 2017 WL 2724938 (D. Mass. June 23, 2017),
  *aff'd sub nom. Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203 (1st Cir.
  2023) ..................................................................................................................10

*Ward v. Worthen Bank & Tr. Co.*,
  681 S.W.2d 365 (Ark. 1984)..................................................................................29

*White v. Volkswagen Grp. of Am., Inc.*,
  No. 2:11-CV-02243, 2013 WL 685298 (W.D. Ark. Feb. 25, 2013) ...................*passim*

*Williams v. Mozark Fire Extinguisher Co.*,
  888 S.W.2d 303 (Ark. 1994)..................................................................................22

*Williams v. Samsung Elecs. Am., Inc.*,
  No. 23CV989 (EP) (JRA), 2024 WL 1328133 (D.N.J. Mar. 28, 2024) .....................25

*Witasick v. Estes*,
  No. CIV.A. 11-3895-NLH, 2012 WL 3075988 (D.N.J. July 30, 2012) .....................12

**Statutes**

15 U.S.C. § 2308(b)....................................................................................................22

15 U.S.C. § 2310 ................................................................................................24, 25

Ark. Code. Ann. § 4-2-316(2) ..................................................................................22

Ark. Code Ann. § 4-2-607(3)(a) ..............................................................................21

U.C.C. § 2-316(2) .....................................................................................................22

## INTRODUCTION

Plaintiff Laura Young is an Arkansas resident who purchased a used Toyota vehicle from an independent dealership *in Arkansas*, suffered an alleged problem with her vehicle's engine *in Arkansas* (after her car's warranty expired), had her vehicle inspected by a third-party repair service *in Arkansas*, and asserts claims based on an alleged engine defect *under Arkansas law*. Despite having no connection to New Jersey and having never alleged that she specifically interacted with Toyota or one of its dealerships regarding her purchase or repair, she now seeks to sue Defendant Toyota Motor North America, Inc. ("TMNA" or "Toyota") in this Court for breach of warranty, fraudulent concealment, unjust enrichment, and violation of Arkansas's consumer protection statute. Her claims do not belong in this Court and should be dismissed for multiple additional reasons.

This Court should dismiss Plaintiff's Complaint for her threshold failure to plead sufficient facts to support personal jurisdiction over claims asserted against Toyota that arose entirely in Arkansas. The only allegation that connects her claims to New Jersey is her conclusory assertion—made on "information and belief"—that TMNA participated in a joint venture with Defendant Subaru of America, Inc. ("Subaru") involving the class vehicles, a "substantial part" of which purportedly occurred in New Jersey. Compl. ¶ 44. But there are no other facts linking her vehicle or claims to this forum, and the bare assertion that Toyota conducts business in New

Jersey is not enough to plead personal jurisdiction. Her Complaint should be dismissed for this reason alone.

Plaintiff's claims are subject to dismissal for other reasons as well. Even though she is an Arkansas resident who did not suffer any purported harm outside Arkansas, she seeks to represent a nationwide class with respect to her claims for violations of the Magnuson-Moss Warranty Act ("MMWA"), fraudulent concealment, and unjust enrichment. Courts in this district have repeatedly held that named plaintiffs lack standing to pursue such out-of-state claims, which means these nationwide claims should be dismissed. Her Arkansas claims fare no better. Toyota's New Vehicle Limited Warranty ("NVLW") covers only defects in materials and workmanship, not the purported class-wide design defect she alleges here, and she suffered the purported engine issue with her vehicle outside the NVLW's durational limits. Her breach of implied warranty claim also runs afoul of the NVLW's durational limits, while Arkansas law prohibits claims for unjust enrichment where a contract covers the dispute (as Plaintiff concedes by asserting an express warranty claim). And her purchase of the vehicle from an independent dealership, failure to allege that she relied on any Toyota materials in purchasing her vehicle, and inability to plead pre-purchase knowledge dooms her fraudulent concealment and Arkansas consumer protection claims. The Court should dismiss the Complaint in full.

## FACTUAL ALLEGATIONS AND RELEVANT BACKGROUND

Plaintiff is an Arkansas resident who purchased a used 2019 Toyota GR86 in October 2021 from Autowerks of NWA, an independent car dealership in Bentonville, Arkansas.  Compl. ¶¶ 14–15.  She alleges that she was driving her vehicle in Fayetteville, Arkansas in April 2023 when she "experienced sudden loss of motive power and engine disablement."  *Id.* ¶ 20.  Her vehicle had 64,000 miles at the time, outside the NVLW's 60,000 mile powertrain warranty (and well outside the three-year/36,000 mile bumper-to-bumper warranty).[1]  *See* Ex. A, NVLW at 12.

Plaintiff does not allege that she took her vehicle to an authorized Toyota dealership for service or repair when the purported failure occurred.  She instead had the vehicle towed to her residence and then inspected by the Car Clinic in Fort Smith, Arkansas in June 2023.  Compl. ¶ 21.  She alleges that the Car Clinic inspected her vehicle and that "[u]pon a complete professional teardown of the engine, it was determined that the engine failure was due to oil starvation, loss of the oil film and excessive wear."  *Id.*  Plaintiff alleges that her vehicle had not been repaired as of the date of the Complaint.  *Id.* ¶ 22.  She does not allege that she interacted with

---

[1] The Court may consider the NVLW for purposes of this motion to dismiss because the Complaint references the warranty and Plaintiff relies on that warranty for her breach of express warranty claim.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (cleaned up).

Toyota or one of its dealerships about her vehicle until October 2023, when she sent a letter to Toyota notifying the company of her claims related to her vehicle. *Id.* ¶ 24.

Plaintiff alleges that her engine issue is attributable to a defect that causes the engines "to operate at low oil pressure levels with insufficient oil film distribution" that does not adequately lubricate engine components, leading the components to wear down and break. *Id.* ¶¶ 71–81. But she does not allege that Toyota manufactures the engines or class vehicles. Instead, she alleges that Subaru manufactures the vehicles and their engines in Japan and then imports them into the United States for Toyota. *Id.* ¶ 56. She alleges that "Defendants" collectively knew about the purported defect based on (1) pre-release testing, (2) consumer complaints submitted to the National Highway Traffic Safety Administration ("NHTSA"), (3) complaints submitted on vehicle owner forums, and (4) "aggregate data from authorized Toyota and/or Subaru dealerships." *Id.* ¶¶ 94–112. Plaintiff does not distinguish between Toyota and Subaru with respect to these allegations, alleging only that "Defendants" knew about the purported defect based on these various sources. *See id.*

The Complaint further alleges that Toyota and Subaru advertised the vehicles as safe and reliable and cites two advertisements for Plaintiff's vehicle model. *Id.* ¶¶ 113–120. Plaintiff alleges in cursory fashion that "Plaintiffs and other Class

members were exposed to Defendants'" marketing campaign for the class vehicles. *Id.* ¶¶ 117–20.  But there are no specific facts pled suggesting that Plaintiff viewed any particular Toyota materials before she purchased her vehicle, or that any such materials played a role in her purchase decision.  *Id.* ¶¶ 14–24.

Despite the lack of any allegations that Plaintiff reviewed any Toyota advertising material for her vehicle before purchase, purchased her vehicle from a Toyota-authorized dealership, or presented her vehicle for repair at a Toyota-authorized dealership, Plaintiff now seeks to sue Toyota in this Court based on a purported defect in an engine that Toyota did not manufacture.  The Complaint alleges few facts regarding Toyota's activities in New Jersey, much less facts that connect any such activities to Plaintiff's vehicle and claims.  TMNA is a California corporation headquartered in Texas.[2]  *Id.* ¶¶ 33, 36.  Plaintiff generally alleges that this Court "has personal jurisdiction over Toyota because Toyota conducts substantial business" in New Jersey, "some of the actions giving rise to this litigation took place" in New Jersey or caused injury in the state, and unspecified "products, materials, or things processesed, services [sic], or manufactured by Toyota anywhere were used or consumed in this state in the ordinary course of commerce, trade, or

_____

[2] Plaintiff also sued Toyota Motor Corporation ("TMC"), which is a Japanese corporation headquartered in Japan.  Compl. ¶ 33.  The docket does not indicate, at this time, that she has served TMC and therefore this motion is made on behalf of TMNA only.

use." *Id.* ¶¶ 34–39.  Plaintiff alleges that Toyota and Subaru created a joint venture in 2008 to "design, manufacture, distribute, market, sell, warrant, and service" the Toyota Scion FRS and Subaru BRZ (two of the putative class vehicle models).  *Id.* ¶ 54.  She alleges that "a substantial part" of this joint venture took place in New Jersey. *Id.* ¶¶ 43–44.  There are no other facts regarding the joint venture's purported activities in New Jersey.  *See id.* ¶¶ 54–61.

Plaintiff asserts that these allegations are enough for this Court to exercise personal jurisdiction over Toyota, *see id.* ¶¶ 43–50, and brings claims on behalf of a putative nationwide class for violations of the Magnuson-Moss Warranty Act ("MMWA"), fraudulent concealment, and unjust enrichment.  *Id.* ¶¶ 180–221.  She does not allege that she suffered any injury outside Arkansas.  She also asserts claims on behalf of a putative Arkansas class for violations of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), breach of express warranty, breach of implied warranty, fraudulent concealment/omission, and unjust enrichment.

## ARGUMENT

Where a defendant moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the "plaintiff bears the burden of establishing the court's jurisdiction over the defendant[]." *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020) (quotation marks omitted).  "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts"

through "actual proofs, not mere allegations," and at "no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id.* at 213 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004)); *see also Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (observing that plaintiff meets pleading burden by "establishing with *reasonable particularity* sufficient contacts between the defendant and the forum state") (emphasis added).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts to create "a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

Where claims sound in fraud, a complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to identify "the time, place and substance of the defendant's alleged conduct." *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that

would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *Alban v. BMW of N. Am., LLC*, No. Civ. 09-5398, 2010 WL 3636253, at *9 (D.N.J. Sept. 8, 2010) (alteration omitted) (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006)).

## I.    The Court Cannot Exercise Personal Jurisdiction Over Toyota Based on the Cursory Allegations in Plaintiff's Complaint.

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc.*, 384 F.3d at 96. Because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution," parties "who have constitutionally sufficient minimum contacts with New Jersey are subject to suit there." *Id.* (quotation marks omitted); *see also Subaru of Am., Inc. v. Cheshire Foreign Auto Serv., Inc.*, No. 1:23-CV-02281, 2024 WL 2319337, at *1 (D.N.J. May 22, 2024) (O'Hearn, J.) (same). The court "can assert either general jurisdiction (i.e., 'all-purpose' jurisdiction) or specific jurisdiction (i.e., 'case-linked' jurisdiction) over a defendant that has minimum contacts with the forum." *Abira Med. Lab'ys, LLC v. CoreSource, Inc.*, No. CV 23-03777 (GC) (TJB), 2024 WL 3964293, at *3 (D.N.J. Aug. 28, 2024). Because TMNA is incorporated in California and headquartered in Texas, Compl. ¶¶ 33, 36, this Court clearly lacks general jurisdiction over TMNA, *see, e.g.*, *Fischer v. Fed. Express Corp.*, 42 F.4th

8

366, 383 (3d Cir. 2022) (general jurisdiction restricted to "state of incorporation" or "principal place of business").

That leaves specific jurisdiction, which reaches only "*claims that arise out of or relate to* the minimum contacts a plaintiff can demonstrate between the defendant and the forum state." *Id.* (emphasis added). A plaintiff must plead facts showing (1) purposeful availment, or "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state," and (2) that the "contacts … give rise to—or relate to—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). "[I]f the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

The Complaint does not come close to pleading facts showing that Toyota's purported contacts with New Jersey give rise to or relate to her claims. Plaintiff pleads a handful of boilerplate allegations regarding Toyota's activities in New Jersey, but no facts specific to her vehicle or the claims at issue in this case. *See* Compl. ¶ 43. The only attempt to plead actual ***facts*** related to Toyota's contacts in New Jersey relate to the joint venture that Toyota allegedly formed with Subaru to "design, manufacture, distribute, market, sell, warrant, and service" certain class vehicles. *Id.* ¶ 54. But Plaintiff pleads only upon "***information and belief***" that a

"substantial part of that joint venture occurred in New Jersey through the activities of TMNA" and Subaru.  Compl. ¶ 44; *see also id.* ¶¶ 54–61 (describing the joint venture but failing to plead any facts regarding Toyota's activities in New Jersey). Courts have repeatedly found that such allegations fall far short of pleading personal jurisdiction based on a joint-venture theory.  *See Ward v. Auerbach*, No. CV 16-12543-FDS, 2017 WL 2724938, at *11 (D. Mass. June 23, 2017) (finding that there was an "insufficient basis for the exercise of personal jurisdiction" based on a "joint-venture theory" where plaintiff's allegations were "made in only conclusory terms, *on information and belief*, without any factual detail") (emphasis added), *aff'd sub nom. Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203 (1st Cir. 2023); *see also Thaxton v. GEICO Advantage Ins. Co.*, No. 1:18-CV-00306-KWR-KK, 2022 WL 488141, at *4–5 (D.N.M. Feb. 17, 2022) (joint venture theory failed where plaintiff did not "set forth facts or allegations" to satisfy elements of joint venture under New Mexico law and instead relied on conclusory allegations that "Defendants worked together as a joint venture to sell automobile policies to New Mexico residents"); *Polytec Internacional, S.A. v. Artco Glob. Grp., LLC*, No. 2:23-CV-480, 2023 WL 8600575, at *5 (S.D. Ohio Sept. 6, 2023) (similar).

The declaration of John Gray ("Gray Decl.") supporting Subaru's motion to dismiss confirms that Plaintiff's joint venture allegations are nowhere near sufficient to plead personal jurisdiction.  Subaru had no involvement in the design,

manufacture, and/or sales of the vehicles at issue, including Plaintiff's vehicle. Gray Decl. ¶¶ 4–5. Nor does Subaru (or any other Subaru entity) import or distribute Toyota or Scion vehicles in the United States. *See id.* ¶ 5. SOA was not even a party to, and had no involvement in, any joint venture or other arrangement relating to any Toyota or Scion vehicles, including Plaintiff's vehicle. *Id.* ¶ 7. Thus, Plaintiff is wrong that a joint venture involving Subaru existed or even took place in New Jersey—much less that a "substantial part" of the alleged joint venture took place in New Jersey—which wholly undermines her reliance on this conclusory allegation to assert personal jurisdiction.

Plaintiff's joint-venture allegation therefore amounts to nothing more than Toyota transacting business in New Jersey. The Third Circuit has recognized that such allegations are not enough to plead specific personal jurisdiction. *See Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (claim of personal jurisdiction was "clearly frivolous" where it rested on "mere unsupported allegation that the defendant transacts business in an area") (quotation

marks omitted).[3]  Indeed, this Court recently relied on *Massachusetts School of Law* to find that "conclusory" allegations regarding activity in New Jersey are not enough to plead personal jurisdiction.  *Subaru of Am., Inc.*, 2024 WL 2319337, at *2; *see also Antico v. RAM Payment, LLC*, No. 1:20-CV-12130, 2024 WL 4315255, at *6 (D.N.J. Sept. 26, 2024) (O'Hearn, J.) (rejecting personal jurisdiction where plaintiffs relied on "nothing more than vague and conclusory allegations").  As a result, Plaintiff fails to plead facts showing that Toyota's purported contacts with New Jersey relate to a vehicle that Plaintiff purchased in Arkansas and purportedly suffered the alleged defect in Arkansas.  *See Hepp*, 14 F.4th at 208 (observing that there must be a "strong relationship among the defendant, the forum, and the litigation" to establish specific personal jurisdiction) (quotation marks omitted).[4]

---

[3] *See also Abira Med. Lab'ys, LLC v. Cigna Health & Life Ins. Co.*, No. 22CV6408 (EP) (AME), 2023 WL 4074081, at *3 (D.N.J. June 16, 2023) (allegations that defendant conducted business throughout the state, "[e]ven when treated as true," were "insufficient grounds for personal jurisdiction"); *Witasick v. Estes*, No. CIV.A. 11-3895-NLH, 2012 WL 3075988, at *7 (D.N.J. July 30, 2012) (finding that plaintiff failed to plead personal jurisdiction because they "presented no factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between defendants and the forum state," noting that allegations that the "defendants transacted business" in New Jersey were not enough).

[4] TMNA anticipates that Plaintiff will rely upon the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 364–66 (2021), in support of her argument that the Court has personal jurisdiction, notwithstanding the fact that Plaintiff's claims arose in Arkansas.  *See* Dkt. 41 at 2 (citing *Ford Motor Company* in Plaintiff's response to pre-motion letter).  In that case, the Supreme Court held that Montana and Minnesota could exercise personal jurisdiction over

At best, Plaintiff alleges a smattering of activities that she claims Toyota conducts in New Jersey. Yet, she fails to draw any connection between those activities and the vehicle she purchased. For instance, she alleges that Toyota "maintains an interactive website that is accessible in New Jersey and from which it solicits business in New Jersey." Compl. ¶ 45. Tellingly, however, the Complaint fails to allege that Plaintiff viewed that website and relied upon it in making her purchase, let alone that she did so in New Jersey. Plaintiff also alleges that Toyota "disseminated and continues to disseminate television, radio, print, social media, and other forms of promotional and marketing materials from and/or in New Jersey, including material touting its Affected Vehicles." *Id*. ¶ 46. Again, Plaintiff fails to allege Toyota created those marketing materials in New Jersey or that she relied upon them in New Jersey. In fact, the Complaint does not allege that Plaintiff relied on any specific Toyota marketing materials at all when deciding to purchase her vehicle. Lastly, Plaintiff alleges that Toyota "operated dealerships in New Jersey at which salespersons marketed and sold Affected Vehicles to Class Members without

---

Ford where the company conducted substantial business in both states through its dealership network and advertising efforts. Significantly, the "Montana- and Minnesota-based conduct relate[d]" to the plaintiffs' claims because the plaintiffs were residents of those states and their claims arose from car accidents in those states. *Ford Motor Co.*, 592 U.S. at 365. Here, by contrast, Plaintiff is an Arkansas resident and her alleged injuries occurred only in Arkansas, not New Jersey, which means that *Ford Motor Company* is wholly unavailing to Plaintiff.

disclosing material facts … , which damaged and continues to damage Class Members in New Jersey and elsewhere." *Id.* ¶ 47.  But Plaintiff does not allege that she purchased her vehicle in New Jersey—or that it was ever sold there at all—and does not even claim that she visited a Toyota dealership at any time, let alone one located in New Jersey.

Because Plaintiff does not plead sufficient facts to show that her claims "arise out of or relate to" Toyota's purported contacts with New Jersey, she cannot show that the exercise of jurisdiction would "comport[] with fair play and substantial justice."  *D'Jamoos*, 566 F.3d at 102; *see also Subaru of Am., Inc.*, 2024 WL 2319337, at *2 (finding that "conclusory" jurisdictional allegations meant that it was "not clear that [d]efendants have sufficient minimum contact with New Jersey such that the suit does not offend traditional notions of fair play and substantial justice") (quotation marks omitted).  The Complaint should be dismissed for this threshold pleading failure.

## II.    Plaintiff Lacks Standing to Pursue Claims on Behalf of any Putative Class Member Outside Arkansas.

Even if this Court could exercise personal jurisdiction over Toyota (and it cannot), at a minimum it should dismiss Plaintiff's putative nationwide claims for lack of standing.  A "plaintiff must demonstrate standing for each claim he seeks to press," which "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the

particular claims asserted." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis omitted).

Plaintiff asserts claims for violations of the MMWA, fraudulent concealment, and unjust enrichment on behalf of a nationwide class, even though she is an Arkansas resident who purchased her vehicle in Arkansas and allegedly suffered harm only in Arkansas.  As a court in this district explained when analyzing this same issue in another putative automotive class action, named plaintiffs "lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where [the named plaintiffs] have suffered no alleged injury." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020).  In that case, the court dismissed the same nationwide claims at issue here—MMWA violations, fraudulent concealment, and unjust enrichment—for lack of standing and allowed those claims to proceed only under the "respective states' laws" of the named plaintiffs.  *Id.*  Other courts in this district have reached the same conclusion.  *See, e.g., Snowdy v. Mercedes-Benz USA, LLC*, No. CV 23-1681 (ES) (AME), 2024 WL 1366446, at *7 (D.N.J. Apr. 1, 2024) ("[T]he Court finds that the named Plaintiffs can only assert claims on behalf of individuals in states where at least one named Plaintiff has standing for that claim."); *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 221CV18755BRMLDW, 2023 WL 6890996, at *8 (D.N.J. Oct. 19, 2023) ("Named plaintiffs who incur injuries under the laws of their respective states cannot assert Article III standing to

pursue separate, distinct state-law claims under the laws of other states where they suffered no alleged injury."); *Semeran v. Blackberry Corp.*, No. CV 15-750, 2016 WL 3647966, at *6 (D.N.J. July 6, 2016) ("Even when a plaintiff is a part of a multi-state class, courts in this Circuit have held that the plaintiff does not have standing to assert claims under the laws of states in which he does not reside."); *McGuire v. BMW of N. Am., LLC*, No. CIV.A. 13-7356 JLL, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury.").

This Court should follow the same approach and dismiss Plaintiff's putative nationwide claims and limit her claims to those arising under the laws of Arkansas, the only state where she alleges any purported harm.

## III.    Plaintiff's Arkansas Claims Suffer from Numerous Pleading Defects That Compel Dismissal.

Plaintiff asserts claims for breach of express and implied warranties (and a related MMWA claim), unjust enrichment, fraudulent concealment, and a violation of the Arkansas DTPA on behalf of herself and a putative Arkansas class.  Although the Court lacks personal jurisdiction over these claims for the reasons stated above, they are all nevertheless subject to dismissal due to lack of supporting factual allegations and threshold legal flaws.

## A.    Plaintiff's Express Warranty Claim Fails on Multiple Grounds.

Plaintiff claims that Toyota breached the express warranty for her 2019 GR86 vehicle by "failing to timely and adequately repair" her purported engine defect. Compl. ¶ 241.   But defendant TMNA did not issue the express warranty for Plaintiff's vehicle.  Having failed to sue the actual warrantor for her vehicle, Plaintiff cannot pursue her claim for breach of express warranty against TMNA.  *See Luppino v. Mercedes-Benz USA, LLC*, No. 09-CV-5582 (DMC) (JBC), 2013 WL 6047556, at *6 (D.N.J. Nov. 12, 2013) (dismissing express warranty claims against parent company because plaintiffs "failed to provide facts to support the allegation that" the parent company warranted the vehicles).  Her express warranty claim should be dismissed for this reason alone.

Even if Plaintiff could pursue her express warranty claim against TMNA (and she cannot), this claim should still be dismissed for at least three separate reasons:

***First***, the NVLW applies only to repairs "needed to correct defects in *materials or workmanship*," not defects in design.  Ex. A at 13 (emphasis added). The Third Circuit has explained that "defects in 'workmanship' and 'materials' are flaws pertaining to the construction or manufacture of a product, while defects in 'design' are shortcomings that arise in the plans for a product's creation."  *Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019).

Plaintiff clearly alleges a design defect, as she claims that *all* 2013–2016 Scion FR-S, 2017–2023 Toyota 86/GR86, and *all* 2013–2023 Subaru BRZ model vehicles are equipped with a four-cylinder boxer engine that suffers from "low oil pressure and/or a loss of oil film, which starves the engine of oil" and leads to premature breakdown.  Compl. ¶¶ 1–3.  She particularly alleges that the engine is defective because (1) Defendants decided to seal parts of the engine with "RTV silicone instead of using traditional gaskets" and (2) Defendants applied too much RTV silicone on the engines.  *Id.* ¶¶ 76–79; *see also id.* ¶¶ 73–74 (contrasting the engine design in the class vehicles to the design of similar engines used in Porsche vehicles).  Those allegations regarding the choice of materials for engines spanning "thousands" of class vehicles are the hallmarks of a design defect claim.  Compl. ¶ 61; *see Coba*, 932 F.3d at 123–24 (concluding that plaintiff alleged design defect based on allegations that Ford decided to use certain materials in "constructing its fuel tanks" and the alleged defect spanned "all of the vehicles manufactured this way") (quotation marks omitted).  Her cursory reference to "materials and workmanship," Compl. ¶¶ 71, 243 cannot transform what is plainly an alleged design-defect claim into one that is covered under the NVLW, *see Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018) (observing that "where a plaintiff makes only conclusory references to manufacturing defects, and instead relies on allegations and/or evidence that the claimed defects are common to an

entire class of vehicles based on their design . . . the plaintiff's claim is more appropriately characterized as a design defect claim, and plaintiff cannot prevail on an express warranty claim concerning materials and workmanship") (quotation marks omitted); *cf.* Compl. ¶ 243 (alleging that "[t]he Engine Defect is a *uniform* defect") (emphasis added).

As a result, the NVLW does not cover the alleged engine defect and her claim should be dismissed for this reason alone. *See Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("[A] design defect cannot also be a defect in material and workmanship."); *see also Coba*, 932 F.3d at 122 ("[I]t is unsurprising that courts have regularly rejected arguments like Coba's that a design defect is within the scope of a materials-and-workmanship warranty clause.") (collecting cases).[5]

***Second***, Plaintiff's express warranty claim fails for another, independent reason: she alleges that her vehicle did not experience the purported engine defect until 64,000 miles, which is outside the NVLW's 60,000-mile powertrain limit (and

---

[5] *See also, e.g.*, *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 (3d Cir. 2010) (affirming dismissal of breach of warranty claims based on alleged design defect where warranty covered only defects in materials and workmanship); *Robinson v. Kia Motors Am., Inc.*, No. 13-006, 2015 WL 5334739, at *12 (D.N.J. Sept. 11, 2015) (precluding express warranty claims under a warranty covering "materials and workmanship" where plaintiffs argued "that the defect stem[med] directly from the flawed engine design," rather than defective manufacturing or assembly).

well outside the 36,000-mile limit for the bumper-to-bumper warranty).  Ex. A at 13 ("[Powertrain coverage] is for 60 months or 60,000 miles, whichever occurs first."). Courts routinely dismiss express warranty claims—even in cases where plaintiffs have alleged a latent defect existed—where the allegedly defective part failed after the applicable warranty expired.  *See, e.g.*, *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (noting that "the general rule, from which we see no reason to deviate, is that an express warranty does not cover repairs made after the applicable time . . . has elapsed" and "latent defects discovered after the term of the warranty are not actionable") (quotation marks omitted); *White v. Volkswagen Grp. of Am., Inc.*, No. 2:11-CV-02243, 2013 WL 685298, at *3 (W.D. Ark. Feb. 25, 2013) (dismissing Arkansas breach of warranty claim where plaintiff's vehicle "was not covered under the [w]arranty when she experienced transmission problems").[6]

*Third*, Plaintiff did not comply with presentment and notice requirements under the NVLW and Arkansas law.  She alleges that when the purported defect occurred she had the vehicle towed to her house, where it was inspected by a third-

---

[6] Insofar as Plaintiff alleges that the NVLW was procedurally or substantively unconscionable or failed of its essential purpose, Compl. ¶¶ 192–93, 245, any such allegations are "unavailing" because "there is nothing facially unconscionable about a five-year/60,000-mile warranty in the auto industry."  *White*, 2013 WL 685298, at *5 (observing that "[e]ven warranties with more restrictive terms have been approved by many courts") (collecting cases).

party repair service that conducted a "complete professional teardown.[7]  Compl. ¶ 21.  But she does not allege that she took her vehicle to an authorized Toyota dealership or even contacted Toyota regarding the repair until she sent a demand letter in October 2023 (six months after the purported engine failure occurred).  But the NVLW advises that to "obtain warranty service in the United States . . . [the owner should] take [her] vehicle to an authorized Toyota dealership."  Ex. A at 32; *see also id.* at 5 (advising customers to present issues to the dealership as a first step).  The Complaint itself repeatedly concedes that the warranty requires such presentment.  *See, e.g.*, Compl. ¶ 129 ("Defendants require their customers to return to authorized dealerships to perform warranty repairs."); *see also id.* ¶¶ 142, 147.

Having failed to comply with the NVLW's presentment requirement, Plaintiff cannot claim that Toyota breached the NVLW.  And Arkansas requires a buyer "within a reasonable time after he discovers or should have discovered any breach" to "notify the seller of the breach or be barred from any remedy." Ark. Code Ann. § 4-2-607(3)(a).  Here, however, Plaintiff failed to do so until approximately six months after the purported defect appeared, Compl. ¶ 24, which is another reason to

---

[7] The NVLW does not provide coverage for improper repairs or "[a]lteration or tampering, including installation of non-Genuine Toyota Accessories."  Ex. A, NVLW at 14.  Insofar as Plaintiff had a third-party company tear down her engine (and did not take it to an authorized Toyota dealership), any improper repair or tampering with the vehicle may also void warranty coverage.

dismiss this claim, *see Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 305 (Ark. 1994) ("We have held that the giving of reasonable notice is a condition precedent to recovery under the provisions of the commercial code and that the giving of notice must be alleged in the complaint in order to state a cause of action.").

**B.    Plaintiff Cannot Maintain Her Claim for Breach of Implied Warranty.**

Plaintiff also asserts a claim for breach of the implied warranty of merchantability. This claim fails because the NVLW expressly limits "[a]ny implied warranty of merchantability or fitness for a particular purpose" to the "duration of [the] written warranties." Ex. A at 11. As explained above, Plaintiff's vehicle did not experience the alleged defect until 64,000 miles, which means that it was also outside of the NVLW's durational limit for any implied warranties. *See id.* The Uniform Commercial Code—which Arkansas has adopted—explicitly permits parties to modify implied warranties in this manner. *See* U.C.C. § 2-316(2); Ark. Code. Ann. § 4-2-316(2); *see also* 15 U.S.C. § 2308(b) ("[I]mplied warranties may be limited in duration to the duration of a written warranty of reasonable duration . . . .") (MMWA).

In addition to this threshold failing, Plaintiff does not allege sufficient facts showing that her vehicle was unmerchantable. "To sustain a claim for breach of warranty of merchantability" under Arkansas law, the plaintiff must establish that the "product was not fit for its ordinary purpose." *Lakeview Country Club, Inc. v.*

*Superior Prod.*, 926 S.W.2d 428, 431 (Ark. 1996). "The warranty of merchantability generally promises that the goods will conform to the ordinary standards and are of average grade, quality, and value of like goods which are generally sold in the stream of commerce." *Ctr. v. Conagra Foods, Inc.*, No. 5:14-CV-05248, 2015 WL 4106473, at *6 (W.D. Ark. July 6, 2015) (quotation marks omitted); *see also, e.g.*, *Greene v. BMW of N. Am.*, No. CIV. 2:11-04220 WJM, 2012 WL 5986457, at *3 (D.N.J. Nov. 28, 2012) (observing that the "implied warranty comes nowhere close to guaranteeing perfection" and instead "provides for a minimum level of quality"). As a result, vehicles are not unmerchantable if they undergo "one or two repairs" that "apparently solve[] any defect-related issue[s] . . . for at least six months, and possibly permanently." *Mooradian v. FCA US, LLC*, No. 1:17-CV- 1132, 2017 WL 4869060, at *7 (N.D. Ohio Oct. 27, 2017).

Plaintiff alleges that her engine experienced a purported loss of power on only one occasion. Compl. ¶ 20. She does not allege that she has even tried to have the engine repaired, let alone that any such repair failed to remedy the purported defect. And while she alleges that the vehicle remains disabled, there are no facts showing that she could not drive the vehicle before the purported engine issues or that she would be unable to drive the vehicle after a repair. *See Brown v. Hyundai Motor Am.*, No. CV1811249SDWJAD, 2019 WL 4126710, at *5 (D.N.J. Aug. 30, 2019) (observing that a "key factor" is whether the owner is "still able to drive [the vehicle]

despite the alleged defect[]" and dismissing implied warranty claim where plaintiff was "able to drive her car after the repair").  The lack of any facts showing that her vehicle would not be functional after a repair defeats her implied warranty claim.

### C.    Plaintiff's MMWA Claim Fails With Her Warranty Claims.

Because Plaintiff's breach of express and implied warranty claims fail, her parallel MMWA claim fails as well. *See Cooper*, 374 F. App'x at 254 (affirming dismissal of MMWA claims based on state-law breach of warranty claims that were dismissed); *Demorato v. Carver Boat Corps.*, No. 06–240, 2007 WL 1456207, at *8 (D.N.J. 2007) ("Breach of warranty actions that fail under state law will also fail under the Magnuson-Moss Act.").

Additionally, Plaintiff cannot maintain her MMWA claims on a class-wide basis. The MMWA expressly provides that "[n]o claim shall be cognizable in a suit brought [in federal court] . . . if the action is brought *as a class action*, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3) (emphasis added).   The Ninth Circuit has held that the MMWA's "text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs." *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034–35 (9th Cir. 2020).  Last year, the Third Circuit adopted *Floyd*'s reasoning, holding that the Class Action Fairness Act's provision requiring only a single named plaintiff does not trump the MMWA's "stringent jurisdictional requirements" that require "at least

one hundred named plaintiffs." *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183–85 (3d Cir. 2023); *see also, e.g.*, *Williams v. Samsung Elecs. Am., Inc.*, No. 23CV989 (EP) (JRA), 2024 WL 1328133, at *5 (D.N.J. Mar. 28, 2024) (finding that court lacked jurisdiction over class-based MMWA claim where there was only one named plaintiff and noting that "every court in this District to address *Floyd* has followed its reasoning"); *Kavon v. BMW of N. Am., LLC*, 605 F. Supp. 3d 622, 631–32 (D.N.J. 2022) (same) (collecting cases). Pursuant to this binding authority, this Court must dismiss Plaintiff's class-based MMWA claim since she is the sole named plaintiff.

### D.    Plaintiff Cannot Pursue a Claim for Unjust Enrichment Under Arkansas Law.

Plaintiff's unjust enrichment claim fails for two distinct reasons. First, this claim is based on the same facts as her breach of express warranty claim, which means she has an adequate remedy at law and therefore cannot assert a claim for unjust enrichment. *See Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 813 (E.D. Ark. 2016) (claim for unjust enrichment will not lie where parties "have an enforceable contract that fully addresses a subject") (quotation marks omitted); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1086 (E.D. Ark. 2013) (dismissing claim for unjust enrichment under Arkansas law where "valid and binding express one-year limited warranty contract" existed).

Second, Arkansas requires Plaintiff to allege facts showing that she conferred a benefit upon Toyota. *See City of Damascus v. Bivens*, 726 S.W.2d 677, 679 (Ark. 1987) (recovery for unjust enrichment "measured by the value of the benefit conferred upon the party unjustly enriched"). Plaintiff cannot satisfy this requirement because she purchased her vehicle from an independent dealership not affiliated with Toyota. Compl. ¶ 15. Because she did not confer any benefit on Toyota, she cannot pursue a claim for unjust enrichment under Arkansas law. *See White*, 2013 WL 685298, at *9 (dismissing unjust enrichment claim under Arkansas law where plaintiff "admits that she is the third-hand purchaser of her used [vehicle], and therefore, Defendant received no monetary benefit from [plaintiff's] purchase"). Her unjust enrichment claim should be dismissed for this reason as well.

### E.    Plaintiff Does Not Allege Sufficient Facts to Support Her Claim for Fraudulent Concealment.

Plaintiff alleges that "Defendants intentionally concealed" the purported engine defect despite knowing that the engines in the class vehicles were purportedly prone to oil starvation. Compl. ¶¶ 267, 273. Plaintiff does not plead any facts specific to Toyota—she alleges only that "Defendants" fraudulently concealed the purported defect. *Id.* ¶¶ 265–80. These are the type of group pleading allegations that run afoul of the rule that a "plaintiff cannot refer to all defendants who occupied different positions and presumably had distinct roles in the alleged misconduct without specifying *which* defendants engaged in what wrongful conduct."

*Pellecchia v. Cty. of Burlington*, No. CV224707CPOMJS, 2022 WL 17667906, at

*2 (D.N.J. Dec. 13, 2022) (O'Hearn, J.); *see also Evans v. Murphy*, No.

CV225427CPOAMD, 2023 WL 3735946, at *2 (D.N.J. May 31, 2023) (O'Hearn,

J.) (rejecting "conclusory allegations against defendants as a group") (cleaned up).

In any event, her claim nevertheless fails for lack of reliance and causation, failure

to show a duty to disclose, and failure to plead Toyota's pre-purchase knowledge of

the purported engine defect.[8]

### 1. Plaintiff Did Not Rely on Any Purported Omissions

In order to plead a claim of fraudulent concealment under Arkansas law,

Plaintiff must allege facts showing that she justifiably relied on the purported

omission and that the concealed fact caused her damage. *McGill v. Lafayette Cty.*,

No. 4:07CV4003, 2007 WL 2898543, at *2 (W.D. Ark. Sept. 28, 2007) (citing *Tyson*

*Foods v. Davis*, 66 S.W.3d 568 (Ark. 2002) and *Ultracuts Ltd. v. Wal-Mart Stores,*

---

[8] Plaintiff does not allege a separate claim for fraudulent misrepresentation, but the Complaint does allege that "Defendants" misrepresented certain facts. Compl. ¶¶ 269, 275. Insofar as Plaintiff is pursuing a theory of fraudulent misrepresentation, any such theory cannot succeed. The representations from Toyota that she cites in the Complaint—advertisements for the GR86 that referred to how it is "just as comfortable cruising down the freeway as it is at devouring apexes" and is "engineered to deliver," *id.* ¶¶ 119–20—is inactionable puffery. *See Morris v. Knopick*, 521 S.W.3d 495, 502 (Ark. Ct. App. 2017) ("Fraud cannot be based on an expression of opinion or puffery."). She also does not plead facts showing that she relied on any Toyota marketing materials when making her vehicle purchase. *See Muccio v. Hunt*, 490 S.W.3d 310, 312–13 (Ark. 2016) (must prove justifiable reliance to establish fraud claim).

*Inc.*, 33 S.W.3d 128 (Ark. 2000)).  She does not plead adequate facts to support either reliance or causation because she never alleges that she would have been aware of Toyota's purported omission and acted differently had the purportedly omitted facts been disclosed.

At best, Plaintiff alleges that Defendants "create or approve much, if not all, of the marketing materials *provided by a Toyota- or Subaru-authorized dealership* to consumers prior to or at the time of purchase" and "Defendants, *through their dealers* and those marketing materials, could have disclosed the Defect and the true nature of the class Vehicles, but failed to do so."  Compl. ¶ 125 (emphasis added). But Plaintiff purchased her vehicle from an independent dealership not affiliated with Toyota and never alleges that she viewed any Toyota marketing materials before making her purchase or that such materials influenced her decision, much less with the specificity required under Rule 9(b).  *Id*. ¶¶ 14–18.  Her fraudulent concealment claim should be dismissed for this reason alone.

### 2. Toyota Did Not Owe Plaintiff a Duty to Disclose

"Failure to speak is the equivalent of fraudulent concealment only in circumstances involving a confidential relationship when a duty to speak rises where one party knows another is relying on misinformation to his detriment.  *Ward v. Worthen Bank & Tr. Co.*, 681 S.W.2d 365, 368 (Ark. 1984).  Plaintiff not only fails to plead that she had a confidential relationship with Toyota but concedes that she

had ***no relationship*** with Toyota because she purchased her vehicle from an independent dealership.  Compl. ¶ 15.  And she did not even present her vehicle to an authorized Toyota dealership when the engine allegedly lost power.  *Id.* ¶¶ 20–21.  The failure to plead any facts suggesting any sort of relationship with Toyota—much less the confidential one Arkansas requires for a duty to disclose—means that her fraudulent concealment claim should be dismissed for this additional reason.  *See Pinon v. Daimler AG*, 2019 WL 11648560, at *16–18 (N.D. Ga. Nov. 4, 2019) (dismissing Arkansas fraudulent concealment claim for lack of duty to disclose where plaintiff did not "engage in any sales transaction" with manufacturer or one of its dealerships).

3.    Plaintiff Does Not Plead Sufficient Facts to Show That Toyota Knew of the Purported Engine Issue

"To prevail in a case of fraudulent nondisclosure, the plaintiff must prove that the defendant concealed a material fact known to it."  *Hobson v. Entergy Arkansas, Inc.*, 432 S.W.3d 117, 125 (Ark. Ct. App. 2014).  Plaintiff attempts to show that Toyota knew of the purported engine issue based on (1) pre-release testing, (2) complaints submitted to NHTSA, (3) on-line consumer complaints, and (4) warranty data.  Compl. ¶¶ 94–112.  Taken together, these sources—all of which are pleaded collectively against "Defendants" and not Toyota specifically—fall far short of showing that Toyota knew of the purported defect before her purchase:

- **Pre-Release Testing:** Plaintiff alleges that Defendants conducted various tests on the putative class vehicles before offering them for sale, including "bench testing" the engines and testing the engines under extreme conditions. *Id.* ¶¶ 97–99. But what is missing from these allegations are the *results* of these tests, which Plaintiff only speculates about. *See id.* Without such facts, Plaintiff's allegations about testing do not show that Toyota knew of the purported defect. *See, e.g.*, *Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (rejecting position that "theoretical results from pre-production tests without accompanying verification that the tests occurred and reveal a safety defect can survive a motion to dismiss"); *Schechter v. Hyundai Motor Am.*, No. CV 18-13634 (FLW), 2019 WL 3416902, at *8 (D.N.J. July 29, 2019) (finding that "general allegations" of "pre-production testing, pre-production design failure mode and analysis date, [and] production design failure mode and analysis date" did not plead knowledge); *Granillo v. FCA US LLC*, No. CV 16-153 (FLW)(DEA), 2016 WL 9405772, at *8 (D.N.J. Aug. 29, 2016) (similar); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1220 (S.D. Fla. 2021) (holding that "assertions regarding testing, reports, data, and analyses [that] do not elaborate whatsoever as to what that information actually showed" are "precisely the kind of conclusory allegations that *Iqbal* and *Twombly* caution courts to disregard"). These cursory allegations do not show knowledge.

- **NHTSA Complaints:** Plaintiff next relies on 63 complaints submitted to NHTSA since 2018 to claim that Toyota knew of the purported engine issue. Compl. ¶ 105. To start, only nine of these 63 complaints relate to the Toyota GR86 model that Plaintiff purchased, while the rest relate to other Toyota and Subaru vehicle models. *See Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250 FLW DEA, 2015 WL 3487756, at *6 (D.N.J. June 2, 2015) ("[C]onsumers cannot rely on general allegations that a manufacturer had received complaints about similar makes and models of vehicles."). Moreover, all nine of those GR86 complaints post-date Plaintiff's vehicle purchase, which means they cannot show Toyota's pre-purchase knowledge of the alleged engine issue. *See Schechter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2019 WL 3416902, at *6 (D.N.J. July 29, 2019) ("Clearly, Plaintiff cannot rely on events which occurred after his lease, in order to establish that Defendants were aware of the alleged defect during that relevant timeframe.") (collecting cases). The complaints also do not suggest a uniform engine issue related to oil starvation, as many of the complaints allege that the purported problems were related to a valve spring recall repair (and some do not even specify the particular engine problem). *See Hall v. Gen. Motors, LLC*, No. 19-CV-10186, 2020 WL 1285636, at *4 (E.D. Mich. Mar. 18, 2020) (plaintiffs did not plausibly allege knowledge where they did not "specifically identify how many and which complaints" were "related to the Class Vehicles"

and failed to identify whether the complaints arose out of the alleged defect "as opposed to some other potential defect").

Even if all 63 complaints pre-dated Plaintiff's vehicle purchase and related to her vehicle model and the particular defect she alleges, they would still not be sufficient to show knowledge. As one court explained when addressing this issue, "even assuming that [the manufacturer] monitors NHTSA complaints, many courts . . . suggest that the volume of complaints about a specific issue must be significant enough to draw [the manufacturer's] attention." *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 280 (E.D. Mich. 2021) (collecting cases). Plaintiff does not allege any facts showing that 63 complaints over more than five years was unusual or that Toyota would have otherwise noticed this number of complaints in comparison to the total vehicle population. *See, e.g.*, *Dawson v. Gen. Motors LLC*, Civ. No. 19-8680, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) ("[A] company cannot be certain about a systematic part failure based on about 100 instances of failure in a national market over the course of several years."); *Gregorio*, 522 F. Supp. 3d at 281 (finding that "36 NHTSA complaints from a 9-year span" were not sufficient to show knowledge because plaintiffs gave "no indication of the total number of relevant complaints from this period"); *Roe v. Ford Motor Co.*, No. 218CV12528LJMAPP, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019) (observing that plaintiffs failed to plead facts to "make

it reasonable to infer" that 14 NHTSA complaints in three years were "anything more than a blip on Ford's complaints-and-repairs radar," and noting that there were no allegations regarding the component's "failure rate or how that rate compares to the failure rate of a part that the law would deem 'defective'"). The NHTSA complaints Plaintiff relies on do not adequately plead pre-purchase knowledge.

- **On-Line Consumer Complaints:** Plaintiff alleges that Defendants track on-line consumer complaints about their vehicles. Compl. ¶¶ 107–10. But there are no facts showing that Toyota reviewed any complaints about the alleged engine issue in the class vehicles. *See Smith*, 988 F.3d at 885 ("Plaintiffs' assertion that GM reads online message boards . . . is speculative absent any supporting facts."). And even if Plaintiff pleaded such facts, she cites merely two examples of consumer complaints, and only one of those is for a Toyota vehicle (and that complaint is for a different model than Plaintiff's vehicle). Compl. ¶ 109. That unverified complaint does not mention that the purported engine failure was due to oil starvation (nor does the other complaint for a Subaru vehicle). For the reasons stated above, and even assuming Toyota reviews such complaints, one complaint posted on a third-party website that does not mention the purported defect does not come close to establishing pre-purchase knowledge. *See, e.g., Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL

2267448, at *4 (N.D. Cal. May 17, 2018) (fifty-six complaints not enough to show knowledge); *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2017 WL 6549931, at *13 (C.D. Cal. Aug. 21, 2017) ("Complaints on third-party websites do not, by themselves, commute knowledge to a manufacturer.").

- **Warranty Data:** In a final effort to plead knowledge, Plaintiff claims that "Defendants knew about the Engine defect from warranty data" and "likely receive hundreds or thousands of related warranty claims." Compl. ¶ 111. But nowhere do they allege any actual claims data or other information suggesting that Toyota knew of the purported engine issue. *See Hall*, 2020 WL 1285636, at *3 (finding that allegations about "aggregate warranty data" were "too vague and pleaded at too high a level of generality to support a reasonable inference that [the manufacturer] had pre-sale knowledge of the" purported defect, and observing that courts "routinely reject [such] generalized allegations") (quotation marks omitted) (collecting cases). Similar to Plaintiff's vague allegations about "pre-release testing" data, Plaintiff cannot plead knowledge based on undefined "warranty data."

Taken together, the four sources Plaintiff relies on—testing, NHTSA complaints, on-line complaints, and warranty data—are factually and legally

deficient to plead pre-purchase knowledge of the purported engine issue. Her fraudulent concealment claim should be dismissed for this reason as well.

### F.    Plaintiff's Arkansas DTPA Claim Should Be Dismissed.

Plaintiff's Arkansas DTPA claim fails for many of the same reasons as her fraudulent concealment claim. Insofar as her claim is based on Toyota's allegedly false advertisements about the class vehicles, she does not allege with specificity that she relied on any particular misrepresentations about the engine when she decided to purchase her vehicle. Allegations that Toyota advertised the class vehicles as "engineered to deliver" and that Plaintiff was "exposed" to such representations do not satisfy the heightened pleading requirements of Rule 9(b). Compl. ¶¶ 117–20; *see White*, 2013 WL 685298, at *7–9 (dismissing Arkansas DTPA claim where consumer alleged that auto manufacturer concealed a transmission defect because "at no point in the [complaint] did [the plaintiff] specify what false representations were affirmatively made to her," and she did not state "that she relied on particular false representations in making the decision to purchase her vehicle") (emphasis omitted). As *White* observed, allegations based on advertising about the "superior quality, design, or reliability" of a vehicle do not satisfy Rule 9(b) because such allegations about "positive advertising and branding" are "too generic to provide enough information to allow [the defendant] to respond

specifically and quickly to [the plaintiff's] allegations of fraud." *White*, 2013 WL 685298, at *8.

Plaintiff's Arkansas DTPA claim based on fraudulent concealment fares no better. "It is black letter law that when a failure to speak is the equivalent of fraudulent concealment, the law imposes a duty to speak rather than remain silent." *Id.* at *9 (quotation marks omitted). For the reasons stated above, Plaintiff has not adequately pleaded that Toyota knew of the alleged defect or had a duty to disclose. In addition, she provides "no details as to which individuals employed by [Toyota] concealed knowledge of the alleged defect, when such concealment occurred, or how [Toyota's] campaign to fraudulently conceal was carried out." *Id.* (quotation marks omitted). And there are no allegations indicating that a "confidential or fiduciary relationship" existed between Plaintiff and Toyota, particularly since she purchased her vehicle from an independent dealership. *Id.*; *see also Pinon*, 2019 WL 11648560, at *30 (dismissing this claim under similar circumstances because plaintiff did not have a "special relationship" with defendant manufacturer). Thus, Plaintiff's Arkansas DTPA claim must be dismissed.

### G. Plaintiff Lacks Article III Standing to Seek Prospective Equitable Relief.

Plaintiff seeks a range of declaratory relief and an order "enjoining Defendants" from engaging in certain actions related to the distribution and sale of the class vehicles. Compl. Prayer for Relief. Insofar as Plaintiff seeks any such

prospective injunctive or declaratory relief, she "must show that [she] is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012); *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008) (to satisfy Article III, "a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood he will suffer injury in the future." (citations omitted)).  Plaintiff has not met that standard here, because she does not allege that she intends to purchase another Toyota vehicle (much less one with an engine she claims suffers from a purported defect).  *See* Compl. ¶¶ 14–24; *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 105 (1983) (standing to seek injunctive relief depends on whether plaintiff is "likely to suffer future injury" from defendant's conduct, and whether the requested injunction is likely to redress that injury); *McNair*, 672 F.3d at 225 (plaintiffs lacked standing to seek injunctive relief because they did not allege they would purchase defendant's product in the future and therefore "[did] not, and cannot, satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm").  Plaintiff's request for such relief should be rejected.

## CONCLUSION

For the foregoing reasons, Toyota respectfully requests that the Court grant its motion and dismiss the claims addressed herein with prejudice.

Respectfully submitted this 1st day of November 2024.

/s/ *Eric Gladbach*
John P. Hooper
Eric Gladbach
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2100
Fax: (212) 556-2222
jhooper@kslaw.com
egladbach@kslaw.com

Madison H. Kitchens
(*pro hac vice* forthcoming)
J. Franklin Sacha, Jr.
(*pro hac vice* forthcoming)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Phone: (404) 572-4600
Fax: (404) 572-5100
mkitchens@kslaw.com
fsacha@kslaw.com

***Attorneys for Defendant Toyota
Motor North America, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends e-mail notification of such filing to any attorneys of record.

This 1st day of November 2024.

/s/*Eric Gladbach*
Eric Gladbach